24CA0204 Peo v Kachik 07-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0204
Pitkin County District Court No. 01CR80
Honorable Christopher G. Seldin, Judge
Honorable James B. Boyd, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Andrew Michael Kachik,

Defendant-Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE JOHNSON
Freyre and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Victor T. Owens, Alternate Defense Counsel, Parker, Colorado, for Defendant-
Appellant

¶ 1    Andrew Michael Kachik (Kachik) appeals the postconviction court's order denying his Crim. P. 35(c) motion after a hearing.  We affirm.

I.    Background

¶ 2    A jury found Kachik guilty of first degree murder after deliberation, felony murder, attempted first degree murder, and first degree burglary based on the following facts, which Kachik admitted at trial.

¶ 3    One morning in 2001, Kachik's girlfriend, Kate Rivers (Rivers), left him and moved into Vincent Thomas's (Thomas) home with her children.  At around 8:00 that evening, Kachik looked through a bathroom window of the home and saw Thomas standing naked over Rivers.  Kachik entered the home, told Rivers to "have a nice life," and left.  Shortly thereafter, Kachik let himself back in and challenged Thomas to a fight.  Thomas refused to fight and retreated to a bedroom, where he loaded a handgun and called 911.  Kachik spoke to the 911 operator and agreed to leave.

¶ 4    Kachik then drove a short distance to his trailer, collected a loaded pump-action shotgun and extra ammunition, placed them in his truck, and returned to Thomas's home.  Thomas was on the

1

phone with a sheriff's deputy when Kachik let himself into the home for a third time. Thomas still held the handgun, and Kachik left to retrieve the shotgun from his truck. Kachik re-entered the home, shot Thomas from the doorway, and testified that he then "kept taking steps towards [Thomas], and just kept shooting, and shooting until there [weren't any shells] left in the gun." He shot Thomas in the chest, leg, and back of his skull, killing him. Then Kachik returned to his truck to load more shells, came back inside, and fired additional shots through a door concealing Rivers. He then opened the door, and Kachik testified he remembered telling Rivers, "If I wanted you dead, bitch, you'd be dead." He then left the house.

¶ 5     The theory of defense at trial was that Kachik was not guilty of first degree murder or attempted first degree murder because he did not deliberate and then form an intent to kill Thomas or Rivers. Rather, he was guilty of only second degree murder and perhaps attempted second degree murder — both mitigated by heat of passion because he was highly provoked by observing Thomas and Rivers's probable sexual contact and by Thomas "smirking about it." The jury rejected this defense, and the district court imposed a

2

controlling sentence of life in the custody of the Department of Corrections for first degree murder after deliberation.

¶ 6     Kachik appealed, and a division of this court affirmed the judgment of conviction. *See People v. Kachik*, (Colo. App. No. 02CA2522, July 6, 2006) (not published pursuant to C.A.R. 35(f)).

## II.     Postconviction Proceedings

¶ 7     In 2009, Kachik timely moved for postconviction relief under Crim. P. 35(c), asserting numerous claims of ineffective assistance of counsel. Due to an unexplained delay, the postconviction court did not appoint counsel until 2020. Appointed postconviction counsel supplemented Kachik's motion with one additional ineffective assistance claim, and the prosecution responded. The postconviction court resolved a few of Kachik's claims in a written order, but it ordered an evidentiary hearing for twelve of his claims.

¶ 8     At the hearing, the parties largely focused on two claims: that trial counsel had provided ineffective assistance by failing to (1) assert a voluntary intoxication defense and (2) move for a change of venue. The postconviction court heard testimony from Kachik

and from one of his trial attorneys, Jamie Roth (Roth).[1] It found Roth's testimony credible, except it rejected her opinion that it was a strategic error to keep the trial in Pitkin County. In that respect, the court found that Roth's testimony was not objective because she maintained strong feelings about the case and viewed the issue through hindsight instead of evaluating her decision-making at the time of pretrial.

¶ 9    Considering the testimony and circumstances of the case, the court's oral findings included the following:

- "[V]ery, very good attorneys" made a "perfectly professional and sensible decision" not to pursue a voluntary intoxication defense.

- A voluntary intoxication defense would have been unlikely to succeed, particularly when combined with a heat-of-passion defense.

- It was not deficient performance to opt for a heat-of-passion defense and forgo an intoxication defense.

---

[1] Roth was second chair counsel; the first chair counsel died during the postconviction proceedings.

- The case would have been moved to Rio Blanco County if Kachik's counsel had successfully moved for a change of venue.

- Before trial, the defense team made a "wholly reasonable" assessment that a jury in Pitkin County, rather than Rio Blanco County, would be better for Kachik.

- The evidence overwhelmingly favored a guilty verdict for first degree murder after deliberation in any jurisdiction.

- In sum, the defense pursued a reasonable strategy and "did the best they could with a very, very difficult case."

¶ 10 The court concluded that Kachik had not met his burden to prove ineffective assistance of counsel and thus denied the postconviction motion. Kachik now appeals.

### III. Ineffective Assistance Claims

¶ 11 Kachik challenges the postconviction court's denial of his claims that counsel had provided ineffective assistance by deciding

not to (1) assert a voluntary intoxication defense or (2) move for a change of venue.[2]

### A. Standard of Review and Applicable Law

¶ 12    When a postconviction court's ruling follows an evidentiary hearing, we review the denial of a Crim. P. 35(c) motion as a mixed question of fact and law. *People v. Corson*, 2016 CO 33, ¶ 25.

¶ 13    We defer to the district court's assessment of the weight and credibility of witness testimony. *Dunlap v. People*, 173 P.3d 1054, 1061-62 (Colo. 2007); *see also Kailey v. Colo. State Dep't of Corr.*, 807 P.2d 563, 567 (Colo. 1991) ("It is . . . the province of the court, as the trier of fact, to determine the credibility of the witnesses and the weight to be given their testimony."). And we defer to the district court's factual findings unless "they are so clearly erroneous as to find no support in the record." *People v. Beauvais*, 2017 CO 34, ¶ 22. But we review de novo the district court's ultimate legal conclusions. *Dunlap*, 173 P.3d at 1063.

---

[2] We deem the remaining claims from Kachik's postconviction motion abandoned because he did not pursue them on appeal. *See People v. Smith*, 2017 COA 12, ¶ 27.

¶ 14   In a Crim. P. 35(c) proceeding, we presume the validity of a conviction, and the defendant bears the burden of proving, by a preponderance of the evidence, that he is entitled to postconviction relief. *Dunlap*, 173 P.3d at 1061.

¶ 15   To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, the defendant must show that counsel's acts or omissions fell outside the wide range of professionally competent assistance. *Id.* at 687-89.  Judicial scrutiny is highly deferential on this prong, and we must "evaluate particular acts and omissions from counsel's perspective at the time." *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003).  Second, the defendant must show prejudice from counsel's deficient performance — that is, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.  An ineffective assistance claim fails if the defendant does not satisfy either Strickland prong. *Id.* at 697.

## B.    Voluntary Intoxication Defense

¶ 16    Kachik claims that his trial counsel should have asserted a voluntary intoxication defense because it was a viable defense and he had consumed about ten alcoholic beverages on the day of the murder.  We agree with the postconviction court that Kachik failed to establish *Strickland*'s deficient performance prong for this claim.

¶ 17    Voluntary intoxication is a partial defense to specific intent crimes, including first degree murder after deliberation.  *See* § 18-1-804(1), C.R.S. 2025; *Brown v. People*, 239 P.3d 764, 769 (Colo. 2010); *see also* § 18-3-102(1)(a), C.R.S. 2025 (providing that a defendant must intend "to cause the death of a person other than himself" to commit first degree murder after deliberation).  For this defense to succeed, a jury must find that, as a result of self-induced intoxication, the defendant did not form the requisite specific intent.  *See People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) (holding that in the context of first degree murder, "[v]oluntary intoxication . . . bears upon both 'after deliberation' and 'intent'").

¶ 18    The postconviction court found, with record support, that Kachik's defense team had reasonably chosen not to pursue a voluntary intoxication theory of defense or self-defense.  Roth

testified that the team decided not to pursue the voluntary intoxication defense because it was generally ineffective, jurors tended to be "extremely hostile" to it, and they thought a heat-of-passion theory of defense offered the best chance of success. Roth did not recall the specifics of the defense's 2001-02 investigation, but she testified that, in general, a full investigation would precede any decisions on a theory of defense.

¶ 19  It is true that the trial record contains evidence that Kachik had been drinking on the day of the murder. But two deputies trained in intoxication appraisal and one of Kachik's friends testified that Kachik did not appear to be intoxicated in the hours surrounding the murder.

¶ 20  Because the record supports the postconviction court's finding that trial counsel's strategic choice of defense was reasonable, we agree with the court that the choice did not amount to deficient representation. When there is a reasonable basis for counsel's strategic decision, "the decision enjoys a strong presumption of correctness." *Dunlap*, 173 P.3d at 1075. Indeed, "strategic choices made after thorough investigation of law and facts relevant to plausible options are *virtually unchallengeable*." *Strickland*, 466

U.S. at 690 (emphasis added). Here, trial counsel considered plausible defenses before rejecting voluntary intoxication, and the evidence presented at trial would have substantially hindered a voluntary intoxication defense. Thus, Kachik failed to establish that trial counsel's strategic choice of defense fell outside the professionally competent range. *See id.* at 687-90.

¶ 21    The postconviction court properly denied this claim.

## C.    Change of Venue

¶ 22    Kachik claims that his trial counsel should have moved for a change of venue because his case was highly publicized in Pitkin County and many facts reported by the media were highly incriminating. We agree with the postconviction court that Kachik failed to establish either *Strickland* prong for this claim.

¶ 23    First, like the choice of defense, Roth testified that the defense team's decision not to seek a venue change to Rio Blanco County was a strategic one — based on the team's substantial experience with Pitkin County juries and in consideration of the demographic differences between Rio Blanco and Pitkin Counties. The postconviction court found that the decision was reasonable because even in light of extensive pretrial publicity, it was "not clear

10

at all" that Kachik would have had a more favorable jury pool in Rio Blanco County. We agree that counsel's "virtually unchallengeable" pretrial strategic decision fell within the wide range of professionally competent assistance. *Id.* at 690. That Roth later regretted the decision by questioning whether the strategy was correct does not change the fact that trial counsel made reasonable determinations about the venue issue before trial. *See Ardolino*, 69 P.3d at 76.

¶ 24    Second, the record supports the postconviction court's findings that (1) the Pitkin County jury was "thoroughly vetted" over two to three days of publicity-sensitive voir dire; and (2) as described in the background of this opinion, the evidence supporting first degree murder and attempted first degree murder verdicts was overwhelming. For these reasons, we agree with the postconviction court that there was no reasonable probability of a different outcome with a Rio Blanco jury. Accordingly, we conclude that Kachik was not prejudiced by the defense team's decision not to move for a change of venue.

¶ 25    The postconviction court properly denied this claim.

## IV. Oral Findings

¶ 26 The postconviction court made oral findings of fact and conclusions of law following the evidentiary hearing but did not restate the entirety of its oral ruling in the subsequent written order denying Kachik's Crim. P. 35(c) motion. Kachik contends that the court erred by doing so. He is incorrect. For postconviction motions that proceed to a hearing, Crim. P. 35(c)(3)(V) provides that the court "shall enter written *or oral* findings either granting or denying relief." (Emphasis added.) Thus, the court did not err by entering only oral findings here.

## V. Conclusion

¶ 27 The order is affirmed.

JUDGE FREYRE and JUDGE KUHN concur.

12